**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHATARA ADAMS,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  23 C 1390 |
| | ) | |
| **COOK COUNTY SHERIFF'S OFFICE,** | ) | Judge Rebecca R. Pallmeyer |
| **COOK COUNTY,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| **YOLANDA BRADFORD,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 23 C 2559 |
| | ) | |
| **COOK COUNTY SHERIFF'S OFFICE,** | ) | Judge Rebecca R. Pallmeyer |
| **COOK COUNTY,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| **AUGUSTUS ALABI,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  23 C 3444 |
| | ) | |
| **COOK COUNTY SHERIFF'S OFFICE,** | ) | Judge Rebecca R. Pallmeyer |
| **COOK COUNTY,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs in these three related cases are correctional officers employed by the Cook County Sheriff's Office ("CCSO") at the Cook County Jail and its related court facilities.  All three Plaintiffs bring claims under 42 U.S.C. § 1983 and the Illinois Civil Rights Act that arise from the same basic issue: Defendants' failure to take adequate measures to address pervasive and relentless sexual harassment of the officers by detainees.  Plaintiffs in the *Adams* and *Bradford* actions seek to represent female County employees, while the Plaintiffs in the *Alabi* action are

male employees.  Defendants CCSO and Cook County have moved to dismiss all cases.  For the reasons explained here, the motions are granted as against three individual Plaintiffs in the *Adams* action but otherwise denied.

## BACKGROUND

### I.     Prior Related Litigation

These cases are not the first to challenge Defendants' response to offensive behavior of inmates at Cook County Jail.  In November 2017, two class actions were filed in this district alleging that Defendants had failed to remedy widespread detainee sexual harassment at the Jail and its associated facilities.  The first, *Brown*, asserted claims on behalf of a putative class of female public defenders and law clerks who worked with detainees in the Jail and its adjoining courthouse lockups.[1]  *See Brown v. Cook County*, No. 17 C 8085, 2018 WL 3122174, at *2 (N.D. Ill. June 26, 2018).  The second, *Howard*, was filed a few days later and brought claims against the CCSO and County on behalf of a putative class of female non-supervisory CCSO employees and County health-care employees who worked with the same population.[2]  *Id.* at *12. In both *Brown* and *Howard,* plaintiffs alleged that the Sheriff and County officials had tolerated severe and pervasive sexual misconduct, directed at female attorneys and officers, on the part of detainees—conduct that included public masturbation, sexual epithets, and threats of sexual

---

[1]     The *Brown* action named Cook County Public Defender Amy Campanelli (in her official capacity), Cook County Sheriff Thomas Dart (in his official capacity), and Cook County as defendants.  *Brown*, 2018 WL 3122174, at *2.

[2]     As described below, the Seventh Circuit later vacated the class certification order in *Howard*.  *See Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587 (7th Cir. 2021).  While the *Howard* class was initially filed on behalf of all female correctional officers, sergeants, and lieutenants who worked at Cook County Jail since April 22, 2015, it expanded in stages over time and was also merged with a related action, *Wilson v. Cook County Sheriff's Department*, No. 17 C 8248.  As of the time of the Seventh Circuit's order decertifying the plaintiff class in March 2021, that class encompassed all women employed by CCSO at the Jail, all women employees as court services deputies at the Leighton Courthouse, and all women employed by the County in positions with Cermak Health Services, with exceptions for various executive, administrative, and supervisory roles.  (*See* Compl. [1] in *Adams v. Cook Cnty. Sheriff's Off.*, No. 23 C 1390, ¶ 31 n.1.)

violence. They further alleged that Defendants had instituted a culture of silence in which female employees were discouraged from reporting these incidents or filing complaints. *Id.* at *2, 12.

Judge Matthew Kennelly, to whom the *Howard* litigation was assigned, issued a preliminary injunction mandating adoption of procedures intended to reduce sexual harassment in the Jail and the courthouse. (*See* Revised Joint Prelim. Inj. Order [27] in *Howard v. Cook Cnty. Sheriff's Off.*, No. 17 C 8146.) Among other steps Judge Kennelly ordered, the injunction required Cook County Sheriff Thomas Dart to (1) issue a directive that no employee should be discouraged or prevented from filing incident reports over sexual misconduct by detainees; and (2) require that detainees with a reported incident of indecent exposure or exhibitionist masturbation wear specially colored jumpsuits designed to curtail this behavior. *Id.* at 2–3.

Following initial motion practice and discovery, Judge Kennelly certified classes in both the *Brown* and *Howard* actions in August 2019. *See Brown v. Cook County*, 332 F.R.D. 229 (N.D. Ill. 2019); *Howard v. Cook Cnty. Sheriff's Off.*, No. 17 C 8146, 2019 WL 3776939 (N.D. Ill. Aug. 12, 2019), *modified*, 2020 WL 1848208 (N.D. Ill. Apr. 12, 2020), *rev'd and remanded*, 989 F.3d 587 (7th Cir. 2021). While the *Brown* action settled a few months later (*see* Order and Final J. [289] in *Brown v. Cook County*, No. 17 C 8085 (N.D. Ill. Nov. 2, 2020)), the *Howard* action continued. Defendants took an interlocutory appeal from Judge Kennelly's class certification order in that case, and in March 2021, the Seventh Circuit reversed that order, decertifying the *Howard* class on commonality, typicality, and predominance grounds, and remanded the case. *See Howard*, 989 F.3d at 592.

After the *Howard* class was decertified, more than five hundred women employed by the CCSO or County moved to intervene in the class as individual plaintiffs. *Howard v. Cook Cnty. Sheriff's Off.*, No. 17 C 8146, 2022 WL 1404833, at *2 (N.D. Ill. May 4, 2022). Defendants' appeal from class certification presumably rested on a belief that litigation of each plaintiff's claims on an individual basis was the appropriate mechanism. If that was indeed Defendants' view, it appears to have changed once they were faced with five hundred individual cases. The *Howard* parties

adopted a "bellwether" trial approach, and Defendants moved for summary judgment in four "bellwether" cases. On May 4, 2022, Judge Kennelly denied those motions in three of those cases, noting evidence of "widespread apathy to detainee sexual misconduct by supervisory personnel and upper management Jail employees," and genuine issues of material fact as to whether "defendants knew about the problem and [whether] their responses were ineffective and knowingly failed to correct the problem." *Id.* at *14–15.

Following the district court's denial of summary judgment, the *Howard* parties reached a settlement. (*See* Joint Stip. of Settlement and Release, Ex. 1 to Defs.' Mot. to Dismiss [30-1] in *Adams v. Cook Cnty. Sheriff's Off.*, No. 23 C 1390.) That settlement, finalized in late 2022, resolved the claims of 561 CCSO and County employees. (*Id.* at 1, 9.) Because of the decertification ruling, the settlement was entered into on an individual, not class-wide, basis and does not bind any CCSO or County employees who were not part of this group.

## II.    The Instant Litigation

Just a few months after the *Howard* case was resolved, a new wave of CCSO and County employees filed the cases now before this court, alleging sexual harassment claims against their employers. The *Adams* complaint was filed on March 6, 2023, the *Bradford* complaint on April 24, and the *Alabi* complaint on May 31. The Robertson Duric law firm represents all three sets of Plaintiffs; the Christopher Smith Trial Group and Second City Law, P.C. are co-counsel in *Adams*. All three complaints allege violation of the Fourteenth Amendment's Equal Protection Clause under 42 U.S.C. § 1983 and violation of the Illinois Civil Rights Act, 740 ILCS 23/5, as well as a claim for indemnification of CCSO by Cook County.

The plaintiffs in *Adams* and *Bradford* are 272 current or former female employees who have worked in various capacities in the Jail, the adjoining Leighton Courthouse, or other

associated County facilities.[3]  Like the plaintiffs in *Howard*, they allege that Defendants have subjected them to a hostile work environment in which male detainees continue  to expose themselves, physically grope and batter, threaten to rape and sexually assault, and make lewd gestures and sexual remarks towards female employees.  (Compl. [1] in *Adams v. Cook Cnty. Sheriff's Off.*, No. 23 C 1390 (hereinafter "*Adams* Compl."), ¶¶ 15–16; Compl. [1] in *Bradford v. Cook Cnty. Sheriff's Off.*, No. 23 C 2559 (hereinafter "*Bradford* Compl."), ¶¶ 15–16.).  The complaints identify each individual Plaintiff by name, position, and length of employment and include brief descriptions of the circumstances that each one experienced in her employment. Plaintiffs allege that the corrective measures taken by Sheriff Dart and the County in response to the *Howard* court's preliminary injunction, as well as other measures since implemented, are insufficient and that sexual attacks continue to occur daily.  (*Adams* Compl. ¶ 17–19; *Bradford* Compl. ¶ 17–19.)  The complaints allege that Defendants have contributed to this situation by failing to separate repeat offenders from female employees, assigning an inadequate number of correctional officers to ensure control of detainees, and failing to adequately train employees to respond to the attacks.  (*Adams* Compl. ¶¶ 20–22; *Bradford* Compl. ¶¶ 20–22.)  They assert that Defendants continue to maintain a culture of silence that discourages staff from reporting incidents or from pursuing discipline or criminal prosecution of detainees for the offensive conduct. (*Adams* Compl. ¶¶ 23–28; *Bradford* Compl. ¶¶ 23–28.)

The *Alabi* complaint brings claims similar to those in both *Howard* and *Adams/Bradford*, but with a notable twist: unlike the female plaintiffs in those cases, the 65 *Alabi* plaintiffs are *male* CCSO and County employees.  Like the female plaintiffs, the *Alabi* plaintiffs contend that the post-*Howard* corrective measures taken by CCSO and the County, including the use of specially colored green jumpsuits and more frequent write-ups, have failed to adequately curb sexual

---

[3]        Specifically, the *Adams* lawsuit includes 250 female employees and the *Bradford* lawsuit includes 22.   Other than this and the seven weeks separating their filing dates, they are functionally identical.

harassment by male detainees against female employees. (Compl. [1] in *Alabi v. Cook Cnty. Sheriff's Off.*, No. 23 C 3444 (hereinafter "*Alabi* Compl."), ¶¶ 20–21.) But they also claim that they are, as men, separately and distinctly harmed by Defendants' policies and practices. Specifically, they allege that they (1) disproportionately receive higher-risk assignments with known recidivist masturbators relative to female employees and (2) are required to enter active masturbator situations that female employees are not. (*Id.* ¶¶ 22–27.) And, although they acknowledge that direct sexual harassment of male officers "occurs with less frequency than attacks on female employees," the male officers allege that they, too, are subject to direct sexual harassment by male, female, and transgender detainees. (*Id.* ¶ 28.) They claim that although Defendants have taken "some, albeit inadequate, measures" to correct harassment of female employees, they have "almost altogether ignored" harassment of male employees. (*Id.* ¶ 29.) This neglect, they argue, stems from gendered stereotypes that men are not adversely affected by sexual misconduct, which results in men being discouraged from filing incident reports, pursuing disciplinary action, or seeking counseling. (*Id.* ¶¶ 30–36.)

The *Adams*, *Bradford*, and *Alabi* cases were initially assigned to separate judges. On June 12, 2023, this court granted Defendants' unopposed motion to reassign all cases to this court's docket under Local Rule 40.4. (*See* Minute Entry [22] in *Adams v. Cook Cnty. Sheriff's Off.*, No. 23 C 1390.) Defendants then moved to dismiss all three actions in their entirety and— with the court's approval and without Plaintiffs' objection—filed a joint memorandum in support of all three motions. (*See* Defs.' Unopposed Mot. for Reassignment [21] in *Adams v. Cook Cnty. Sheriff's Off.*, No. 23 C 1390; Defs.' Mot. to Dismiss [29] in *Adams v. Cook Cnty. Sheriff's Off.*, No. 23 C 1390; Defs.' Mem. in Support of Mot. to Dismiss [30] in *Adams v. Cook Cnty. Sheriff's Off.*, No. 23 C 1390 (hereinafter "Defs.' Br."); Defs.' Mot. to Dismiss [20] in *Bradford v. Cook Cnty.*

*Sheriff's Off.*, No. 23 C 2559; Defs.' Mot. to Dismiss [17] in *Alabi v. Cook Cnty. Sheriff's Off.*, No. 23 C 3444.)  Following briefing, all three motions to dismiss are now before the court for decision.[4]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on such a motion, the court accepts the truth of all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor.  *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).  "Generally, a district court cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment."  *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018).  The court may, however, consider "information that is subject to proper judicial notice" as an exception to this rule.  *Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018) (citation omitted).

A statute-of-limitations defense is not often resolved at the motion-to-dismiss stage because "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations."  *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017).  "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record."  *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).  However, dismissal may be warranted on limitations grounds where "the plaintiff pleads himself out of court by alleging facts sufficient to

---

[4]     After Defendants filed their motions to dismiss, Plaintiffs' counsel filed an additional related action in this district, *Orange v. Cook County Sheriff's Office*, No. 23 C 5016.  The parties have agreed to apply the motions to dismiss in the *Adams*, *Bradford*, and *Alabi* actions in lieu of a responsive pleading in this matter, and to stay the action pending this court's decision on the first-filed motions to dismiss.  (*See* Minute Entry [21] in *Orange v. Cook Cnty. Sheriff's Off.*, No. 1:23-cv-05016.)

establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009).

## DISCUSSION

### I. Equal-Protection Claims

The first counts of the *Adams*, *Bradford*, and *Alabi* actions all allege that by tolerating widespread sexual harassment by detainees, the CCSO and County denied Plaintiffs equal protection of the laws in violation of the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. § 1983. The court addresses all of these equal-protection claims together, making note of where its analysis differs for each individual action.

To hold a local government entity liable under Section 1983, a plaintiff must show that an official policy, custom, or widespread practice caused their injury. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (quoting *Monell v. Dep't of Soc. Serv's*, 436 U.S. 658, 690 (1978)). To prevail on an equal-protection claim, in turn, a plaintiff must also establish that the defendant intended to discriminate against them on the basis of their protected status. *Nabozny v. Podlesny*, 92 F.3d 446, 453–54 (7th Cir. 1996). Thus, to state a *Monell* claim for an equal-protection violation, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the [defendant] maintained a policy, custom, or practice of intentional discrimination against a class of persons to which [the plaintiff] belong[s]." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation and internal quotation marks omitted).

"The law is well established" in the Seventh Circuit that sexual-harassment and hostile work environment claims are cognizable against public-sector employers under both the Equal Protection Clause and Title VII. *Passananti v. Cook County*, 689 F.3d 655, 662 (7th Cir. 2012) (citing cases). In general, the standards that govern sexual-harassment claims brought under Section 1983 are similar to those that govern such claims under Title VII. *Huri v. Off. of the Chief Judge*, 804 F.3d 826, 835 (7th Cir. 2015). One important difference between the two, however, is that sexual-harassment claims under Section 1983 require proof of discriminatory intent, while

claims under Title VII do not. *Huff v. Sheahan*, 493 F.3d 893, 902–03 (7th Cir. 2007). Thus, "[a] plaintiff wishing to sustain an equal-protection claim of sexual harassment must show both 'sexual harassment' and an 'intent' to harass based upon that plaintiff's membership in a particular class of citizens." *Almaguer v. Cook County*, No. 08 C 587, 2012 WL 4498097, at *7 (N.D. Ill. Sept. 27, 2012) (citing *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990)), *reconsidered on other grounds*, 2013 WL 388992 (N.D. Ill. Jan. 31, 2013), *aff'd sub nom. Wilson v. Cook County*, 742 F.3d 775 (7th Cir. 2014). This intent can be established "either by showing the employer's actions or policy amounted to intentional sex discrimination or by showing that the conscious failure of the employer to protect the plaintiff from the abusive conditions . . . amounted to intentional discrimination." *Id.* (citing *Bohen v. City of East Chicago*, 799 F.2d 1180, 1185 (7th Cir. 1986)).

Unlike the *Howard* plaintiffs, the *Adams/Bradford* and *Alabi* plaintiffs bring their sexual harassment claims only under the Equal Protection Clause and Section 1983, rather than under Title VII. Accordingly, Defendants' overarching argument for dismissal of these claims is that Plaintiffs cannot show they acted with discriminatory intent. They advance two bases for this argument: first, that Plaintiffs' discrimination claims on behalf of both genders are mutually contradictory, and second, that the facts Plaintiffs have alleged show no more than "indifference" in the form of unsatisfactory efforts, rather than *deliberate* indifference towards either gender sufficient to constitute discrimination. As explained here, the court concludes neither argument supports dismissal of these cases on motion.

### 1.    Lack of Intent Based on Allegations by Employees of Both Genders

Defendants first focus on the fact that Plaintiffs have filed similar lawsuits on behalf of male and female employees; in Defendants' view, Plaintiffs cannot, as a matter of law, establish that by failing to address sexual harassment issues at the jail, Defendants intended to discriminate against both genders. Defendants ask the court to take judicial notice of mirrored language in the *Adams/Bradford* and *Alabi* complaints, showing that both groups of Plaintiffs allege harms stemming from the same basic factual predicate. This underlying similarity, they argue, renders

9

it implausible that Defendants intentionally disadvantaged either gender rather than simply failing to protect employees of both genders.[5]  In other words, Defendants ask this court to conclude that they cannot be shown to have animus towards both women and men at the same time based on the same overarching problem of inmate sexual harassment.

Plaintiffs, in response, argue (1) that it would be inappropriate on pleading grounds to dismiss any given complaint based on the content of another, and (2) that, on the merits, an employer may deliberately allow female and male employees to be disadvantaged in unique and distinct ways through the creation of a hostile work environment.  They draw a parallel to the Supreme Court's pronouncement in *Bostock v. Clayton County* that, in the context of Title VII, an employer "doubles" rather than eliminates its liability by discriminating against both genders in different ways.  590 U.S. __, 140 S. Ct. 1731, 1741 (2020).  Based on this analogy, they argue that Section 1983 also allows for simultaneous sexual-harassment claims against the same employer by men and women, particularly given the diversity of employee duties and experiences in the Jail and its related facilities.

Defendants' arguments as to intent are unpersuasive for several reasons.  First, it would be improper at this stage to dismiss the *Adams/Bradford* equal-protection claims for failing to plausibly plead intent solely in light of the allegations in the *Alabi* complaint, or vice versa.  In ruling on a motion to dismiss, a court may take judicial notice of facts that are "not subject to reasonable dispute," such as the fact that another litigation has been filed.  FED. R. EVID. 201(b); *see Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016); *Schmude v. Sheahan*, 312 F.

---

[5]  Defendants also argue that detainees' conduct cannot form the basis for an equal-protection claim because detainees are not state actors as required by the Fourteenth Amendment.  This is true (*see Dunn v. Washington Cnty. Hosp.*, 429 F.3d 689, 692 (7th Cir. 2005)), but the argument is a straw man; Plaintiffs are not suing the Jail's detainees.  They are suing the CCSO and County for consciously failing to take adequate steps to protect them from detainee conduct.  While Plaintiffs' references in briefing to "sex discrimination in the form of sexually-motivated attacks" (Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss [36] in *Adams v. Cook Cnty.*, No. 23 C 1390, at 17) do muddy the waters somewhat, their pleadings make it clear that it is "Defendants' tolerance of sexual harassment" that forms the operative factual predicate for their claims.  (*Adams* Compl. at 3; *Bradford* Compl. at 3; *Alabi* Compl. at 3.)

Supp. 2d 1047, 1064 (N.D. Ill. 2004). It is not disputed that three lawsuits have been filed against the same Defendants, two by female CCSO and County employees and one by male employees, and that all three broadly allege that Defendants tolerated a hostile work environment at the Jail and related facilities. (*Adams* Compl. ¶¶ 2–6, 287–301; *Bradford* Compl. ¶¶ 2–6, 59–73; *Alabi* Compl. ¶¶ 2–6, 103–14). But the three cases remain separate actions that must be analyzed independently for purposes of Rule 12(b)(6): in ruling on Defendants' motions to dismiss each complaint, the court can take judicial notice of the fact that two other complaints were filed, but not of the truth of any of the allegations of those other complaints.[6] *See Schmude*, 312 F. Supp. 2d at 1064. Assuming *arguendo* that the *Adams/Bradford* and *Alabi* complaints *do* assert identical but mirrored theories of hostile work environment liability towards women and men, the court cannot conclude on this basis alone that either lacks plausibility when it might instead be that the other is simply wrong. Discovery may establish that Defendants intended to discriminate against women but not men, vice versa, or neither through their policies and practices. But at this stage, the court is not prepared to dismiss *both* the *Adams/Bradford* and *Alabi* complaints on the grounds that they are mutually contradictory as to intent.

In any event, if it were appropriate to assess the plausibility of each complaint by reading all three in tandem, the court would still conclude that Plaintiffs have pleaded sufficient facts to infer discriminatory intent towards both genders. It is well established in the Title VII harassment context that both a male and female employee may bring hostile work environment claims against the same employer if they "are in different settings, reporting to different supervisors, with different

---

[6] To the extent Defendants are attempting to paint the *Adams/Bradford* and *Alabi* Plaintiffs as taking mutually inconsistent positions, the doctrine that they may have in mind is not "judicial notice," but "judicial estoppel." That doctrine binds an opposing party to positions it has taken in another lawsuit—but only if the opposing party has prevailed on that issue. *See Commonwealth Ins. Co. v. Titan Tire Co.*, 398 F.3d 879, 887 (7th Cir. 2004) ("Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts and prevailed under that position from later reversing its position when it is to its advantage to do so."). Here, neither group of plaintiffs has yet achieved anything of the sort, and the *Adams/Bradford* plaintiffs have no relationship to the *Alabi* litigation—or vice versa—beyond sharing the same counsel.

co-workers." *Venezia v. Gottlieb Mem'l Hosp., Inc.*, 421 F.3d 468, 472 (7th Cir. 2005).[7]  Because each may have "suffered from distinct harassing actions" and have experienced disparate treatment unique to their gender, *id.* at 471, "the inquiry into whether ill treatment was actually sex-based discrimination cannot be short-circuited by the mere fact that both men and women are involved," *Brown v. Henderson*, 257 F.3d 246, 254 (2d. Cir. 2001).

This is particularly true given the factual context for these cases.  As the Seventh Circuit previously recognized (in Defendants' successful appeal from the order certifying a class in *Howard*), harassment at the Jail and related facilities cannot be treated "as if it were one homogenous phenomenon that affects every [employee] in the same way," but rather "comes in materially different forms and affects different workers differently."  *Howard*, 989 F.3d at 603.  If this is true of differently situated female employees, surely there are equally (if not more) significant distinctions between female and male employees' experiences.  At the pleading stage, a plaintiff must only offer "enough details about the subject-matter of the case to present a story that holds together."  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).  Plaintiffs here need only allege facts sufficient to plausibly establish that Defendants may have intentionally allowed "both men and women [to] suffer sexually discriminatory harms in the same workplace, but for different reasons."  *Brown*, 257 F.3d at 254–55.

That test is met in these cases.  The *Adams/Bradford* complaints are brought on behalf of female employees, and allege that they are specifically targeted for severe and pervasive

---

[7]      Defendants argue that *Venezia*, along with other cases cited by Plaintiff, are inapposite because they address hostile work environment claims based on Title VII and not Section 1983.  (*See* Defs.' Reply Mem. in Supp. of Mots. To Dismiss [39] in *Adams v. Cook Cnty. Sheriff's Off.*, No. 23 C 1390, at 3–4 nn. 1–3 (listing cases).)  They argue that Title VII does not require the same proof of intent as equal protection, and that the general principle that Title VII and equal-protection harassment claims are otherwise analyzed under the same general framework does not negate this required showing.  (*Id.* at 5 n.4.)  Defendants are correct about this additional requirement, but the court does not read it as a direction to disregard analogous Title VII caselaw wholesale.  The underlying principle drawn out in these cases is unrelated to the issue of an employer's intent (or lack thereof):  an employer may discriminate against both men and women in distinct ways, as the law under Title VII illustrates, *and* may intend to do so in a way that is actionable under Section 1983 and the Equal Protection Clause.

detainee sexual harassment by male detainees. (*Adams* Compl. ¶¶ 15–16; *Bradford* Compl. ¶¶ 15–16.) The *Alabi* complaint acknowledges this and does not contradict it. (*Alabi* Compl. ¶ 28.) Individual female Plaintiffs have alleged that they were subjected to gender-based epithets and offensive references to their gender and sex characteristics. (*See, e.g.*, *Adams* Compl. ¶¶ 56, 65, 66, 90, 129; *Bradford* Compl. ¶¶ 38, 42.) These experiences could plausibly be considered more offensive to women than to men. *Cf. Davis v. Packer Eng'g, Inc.*, No. 11 C 7923, 2018 WL 1784131, at *3 (N.D. Ill. Apr. 12, 2018) (noting, in the Title VII context, that "[a] work environment equally applicable to male and female employees but particularly degrading to women may meet the 'based on sex' requirement of the hostile work environment framework"). The *Adams/Bradford* complaints allege that Defendants knew about this harassment but failed to take appropriate action. (*Adams* Compl. ¶¶ 23–24; *Bradford* Compl. ¶¶ 23–24.) Those allegations are sufficient to support a reasonable inference that Defendants could have, but knowingly failed to, take specific steps to shield female employees from targeted sexual violence.

The *Alabi* complaint, brought on behalf of male Plaintiffs, makes a different claim: that male Plaintiffs are uniquely impacted by gendered stereotypes that assume men are not affected by sexual harassment. The *Alabi* Plaintiffs allege that they are specifically ostracized and retaliated against as "not man enough" when they speak out, including but not limited to "juvenile, homophobic" comments. (*Alabi* Compl. ¶¶ 30–31; *see also, e.g.*, *id.* ¶¶ 51, 54, 69.) They allege further that unlike female employees, they have not been offered counseling to cope with the mental-health effects of these experiences. (*Alabi* Compl. ¶ 35.) This is a unique theory of gender-based disparate treatment that does not appear in either the *Adams* or *Bradford* complaints and that sets the *Alabi* action apart. Further, while both the *Adams/Bradford* and *Alabi* complaints fault Defendants for discouraging employee reporting and complaints, the *Alabi* action describes different ways in which this culture of silence allegedly manifests against male employees, including priority being given to female over male employees' complaints and male employees being told that they cannot report at all because they are men. (*Compare Adams*

Compl. ¶¶ 25–28, *and Bradford* Compl. ¶¶ 25–28, *with Alabi* Compl. ¶¶ 32–34, 70, 82.) These theories are sufficiently specific and distinct from those presented in the *Adams/Bradford* complaints to meet the pleading standard.

The *Alabi* Plaintiffs have also alleged that they were victims of discrimination arising from Defendants' policies on sexual-harassment interventions and their staffing shortages. Specifically, they allege that they bear the brunt of "higher risk assignments involving known recidivist masturbators . . . because they are male," and that they "are required to enter active masturbator situations and engage with the offending detainees while female employees are not allowed to do so." (*Alabi* Compl. ¶¶ 23–28.) There may be some inconsistency in the allegations that (1) the female Plaintiffs are inadequately shielded from sexual harassment given their gender, and also that (2) the male Plaintiffs are specifically directed to deal with more sexual harassment situations in light of their gender, *and* that (3) Defendants specifically intended to discriminate against both genders in allowing these outcomes. That inconsistency does not doom the male Plaintiffs' complaint, however, because (as described earlier) the *Alabi* Plaintiffs have separately alleged that they have been uniquely disadvantaged in ways that do not contradict the allegations in the *Adams/Bradford* actions.

### 2. Lack of Deliberate Indifference

Defendants argue that there is an "obvious alternative explanation" for Plaintiffs' injuries—namely, that the CCSO and County are making a good-faith effort to protect employees of both genders, but are limited by resource constraints in their ability to do so. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (citing *Twombly*, 550 U.S. at 567). They cite the Seventh Circuit's decision in *Dunn v. Washington County Hospital*, where, in affirming a grant of summary judgment against a plaintiff-employee, the Court of Appeals observed that if an employer "protected men but not women from depredations by third parties, it would transgress the original sense of equal protection, but [plaintiff] does not contend that the [defendant] protected *anyone* . . . ." 429 F.3d 689, 692 (7th Cir. 2005).

Plaintiffs here contend that Defendants have not protected anyone effectively from abuse by inmates, but the similarity between this case and *Dunn* ends there. *Dunn* involved a hospital's alleged failure to protect employees from a single supervisor's misconduct. This case, as stated, involves more than three hundred male and female employees' complaints of gender-based indifference to inmate sexual harassment throughout a jail complex spanning thirty-six buildings across eight city blocks. *See Howard*, 989 F.3d at 592–93. There are more than enough distinct factual allegations and theories within Plaintiffs' complaints to reasonably infer that Defendants may have "conscious[ly] fail[ed]" to protect both male and female plaintiffs from different "abusive conditions" at different moments and in different ways. *Bohen*, 799 F.2d at 1185.

In Defendants' view, Plaintiffs' failure-to-protect theories are also insufficient to establish the denial of equal protection because, as the Seventh Circuit observed in *Hilton v. City of Wheeling*, the Equal Protection Clause is "concerned . . . with equal treatment rather than with establishing entitlements to some minimum of government services," and "does not entitle a person to adequate, or indeed to any, police protection." 209 F.3d 1005, 1007 (7th Cir. 2000). Defendants cite, as well, *McCauley v. City of Chicago*, which upheld dismissal of an equal-protection claim for failure to provide police protection to female domestic-violence victims. 671 F.3d 611, 613 (7th Cir. 2011). The *McCauley* court held that "[a]t most, the factual allegations in the complaint plausibly suggest the uneven allocation of limited police-protection services; they do not plausibly suggest that the City maintained an intentional policy or practice of *omitting* police protection from . . . a [protected] class." *Id.* at 619. But *McCauley* and *Hilton* both involve the provision of *police* services to the general public, not the responsibilities imposed by a public-sector employer-employee relationship. Plaintiffs are not arguing that they have been denied some special level of public resources to which they would not otherwise be entitled. Rather, they are alleging that they have been injured by their employer's deliberate and distinct failures to adequately protect employees of both genders.

15

Defendants in the *Brown/Howard* cases made a similar argument; in ruling on motions to dismiss, Judge Kennelly considered and rejected it. *Brown*, 2018 WL 3122174, at *5 ("The plaintiffs in the present case do not allege merely that Dart and the CCSO failed to single them out for special protection from private violence. As detailed above, they allege that specific CCSO policies and practices are responsible for creating an environment in which detainees believe they may sexually harass female APDs with impunity and have even incentivized such behavior."). The *Howard* case later survived summary judgment: Judge Kennelly found that evidence would permit a jury to find that Defendants acted with deliberate indifference to detainee sexual harassment. *Howard*, 2022 WL 1404833, at * 13. Specifically, he found that the *Howard* plaintiffs had presented adequate evidence that "defendants knowingly failed to take the appropriate action to minimize known risks," and "delayed in implementing some of these measures and failed to implement others." *Id.* at *13. The *Howard* plaintiffs' claims substantially resemble the *Adams/Bradford* Plaintiffs' claims and arise from the same general time period. (*See Adams* Compl. ¶¶ 31–34.) And all Plaintiffs have specifically incorporated the *Howard* court's findings at summary judgment by reference in their pleadings. (*Id.*; *Bradford* Compl. ¶¶ 31–34; *Alabi* Compl. ¶¶ 16–18.)

The decisions in the *Brown* and *Howard* cases are not binding on this court, nor do they have preclusive effect; those rulings were not "valid and final judgment[s]" and the cases were both brought by different plaintiffs. *Patrick v. City of Chicago*, 81 F.4th 730, 736 (7th Cir. 2023) (citation omitted); *see also Kay-R Elec. Corp. v. Stone & Webster Const. Co.*, 23 F.3d 55, 59 (2d Cir. 1994) (denial of summary judgment not "final" for collateral-estoppel purposes). Nor does the doctrine of judicial notice require adherence to those earlier rulings. *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997) (court cannot "achieve through judicial notice what it cannot achieve through collateral estoppel"). The court notes, in any event, that six years have passed since the *Brown* and *Howard* actions were first filed, and Defendants

16

have taken a number of corrective measures to address detainee sexual misconduct at the Jail complex—many in direct response to the injunctive relief ordered by Judge Kennelly.

The court nevertheless concludes that Plaintiffs' allegations are sufficient to state claims of continuing equal-protection violations at the Jail and related facilities. All Plaintiffs allege that Defendants' efforts to address inmate conduct are insufficient and that Defendants are aware this is the case. (*Adams* Compl. ¶¶ 17–19; *Bradford* Compl. ¶¶ 17–19; *Alabi* Compl. ¶¶ 20–21). They describe in detail how certain corrective measures, like the specially made green jumpsuits given to recidivist masturbators, have been inadequately implemented and are ineffective at containing detainee behavior. (*Id.*) These facts are sufficient to "present a story that holds together" that Defendants have knowingly failed to address the issues first presented in *Brown/Howard*. *Swanson*, 614 F.3d at 404. Plaintiffs have alleged that Defendants' failures to respond adequately constitutes a sufficiently widespread policy, practice, or custom, and that the circumstances impact both female and male employees in different ways. These allegations may not find support in the discovery, but for now the court concludes that Plaintiffs in all three cases have stated a claim for violations of Section 1983 and the Equal Protection Clause.

## II. ICRA Claims

The second counts of the *Adams*, *Bradford*, and *Alabi* complaints allege claims under the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/1 *et seq*. ICRA prohibits governmental bodies in Illinois from taking actions that have the purpose or effect of subjecting any person to discrimination based on gender (among other protected characteristics). Defendants argue briefly with respect to the ICRA claims that (1) they fail for the same reasons as the federal equal-protection claims, and (2) they are "supplemental" to these claims and cannot independently survive dismissal. With respect to the first allegation, Plaintiffs counter that their ICRA claims are *not* identical to equal-protection claims under Section 1983 in that the ICRA allows for disparate-impact as well as disparate-treatment theories of liability.

17

The standards for stating an ICRA claim sufficient to survive a motion to dismiss are the same as those under Title VII. *Warr-Hightower v. Illinois Cent. Coll.*, No. 1:17-cv-01153-JBM-JEH, 2017 WL 5484671, at *8 (C.D. Ill. Nov. 15, 2017). An ICRA disparate-treatment claim "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of his [protected status]." *Id.* An ICRA disparate-impact claim "need not allege statistical support to survive a motion to dismiss," but must only "identify a specific employment practice, allege its causation of the disparate impact, and give Defendants fair notice of the claim." *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 907 (N.D. Ill. 2011).

As described above, Plaintiffs have alleged that CCSO and the County knowingly failed to provide employees with support and protection from sexual harassment. They further allege that Defendants instituted a widespread practice of discouraging employee reporting and demeaning and retaliating against those who chose to speak out. As with their equal-protection claims, these allegations are sufficient to state a claim under ICRA of disparate treatment as to all Plaintiffs. Further, at least the *Alabi* Plaintiffs have also pleaded sufficient facts that could plausibly be read to state a claim for disparate-impact liability under ICRA. (*See Alabi* Compl. ¶ 26 ("Defendants' policies regarding detainee sexual misconduct discriminate against *and disproportionately impact* male employees.") (emphasis added).) The court need not reach Defendants' second argument as to whether ICRA is "supplemental" to the federal claims, because it has already concluded that all of Plaintiffs' equal-protection claims survive the Rule 12(b)(6) analysis. Thus, the court holds that Plaintiffs in all three cases have also stated a claim for violation of ICRA.

## III. Statute of Limitations

Finally, the court turns to an issue that is unique to the *Adams* lawsuit. Based on the lists of Plaintiffs provided in the *Adams* complaint, Defendants have identified three groups of individuals whose claims, they argue, should be dismissed on statute-of-limitations grounds: (1) Plaintiffs who were not part of the earlier *Howard* class and whose claims arise from incidents

18

that occurred more than two years prior to the *Adams* complaint's filing date; (2) Plaintiffs who were part of the *Howard* class prior to the Seventh Circuit's decertification order but alleged incidents that occurred prior to 2021, placing them beyond the scope of potential *American Pipe* tolling from their membership in that class; and (3) Plaintiffs who alleged incidents occurring sometime in 2021 but failed to plead the exact date with enough particularity to confirm that their claims are timely.   The court considers each of these groups in turn.

Plaintiffs' Section 1983 claims and ICRA claims are both subject to a two-year statute of limitations.  *See Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019), *as amended on denial of reh'g* (Apr. 17, 2019) (citing *Wallace v. Kato*, 594 U.S. 384, 387 (2007)); 740 ILCS 23/5(b).  Under the continuing violation doctrine, "any . . . acts that contribute to a hostile work environment may be considered so long as one of the contributing acts occurred within the limitations period." *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1036 n.18 (7th Cir. 2003). The *Adams* Plaintiffs filed their complaint on March 6, 2023, so—without regard to any potential tolling—they must allege at least one act of sexual harassment that occurred on or after March 7, 2021 in order for their claims to survive a timeliness challenge.

Under *American Pipe & Construction Co. v. Utah,* however, the filing of a potential class action in federal court tolls the statute of limitations for all putative class members' individual claims that the prior class action also asserted against the same defendant.  414 U.S. 538, 553 (1974); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352–54 (1983).  As relevant here, the prior *Howard* action was originally filed as a class action in 2017 before being decertified by the Seventh Circuit in 2021.  The parties do not dispute that a number of the *Adams* Plaintiffs fall within this definition and are subject to *American Pipe* tolling for the period when the case held putative or certified class status.  As discussed below, however, they do dispute how this period should be defined.

### A.    Group A: *Adams* Plaintiffs with Pre-2021 Claims Outside *Howard* Class

Defendants first argue that the claims of *Adams* Plaintiffs Rosalyn Greene, Marilyn McBride, Dorothy Riles, and Brenda Stratham (collectively, the "Group A Plaintiffs") must be dismissed with prejudice because they (1) only allege harassment that occurred prior to 2021 and (2) do not plead facts sufficient to show that they were part of the *Howard* class definition at any point.    All four allege that they were sexually harassed while working at courthouse facilities located outside the Jail complex in Chicago or its surrounding suburbs.    (*Adams* Compl. ¶¶ 123, 173, 226, 253.)    The *Howard* class definition included CCSO employees who worked at the Jail or the adjoining Leighton Courthouse—but not employees assigned to other courthouses.    (*See Adams* Compl. ¶ 31 n.1.)    Thus, Defendants argue, they are not entitled to the benefit of classwide tolling and their claims are clearly untimely.

The court agrees with Defendants that Greene's, McBride's, and Stratham's claims should be dismissed as untimely, but will dismiss them without prejudice.    Greene alleges that she was employed as a CCDOC correctional officer for thirty years and was sexually harassed while working in the Markham Courthouse in 2017 and 2018.    (*Id.* ¶ 123.)    McBride alleges that she was employed as a Deputy Sheriff for twenty-seven and a half years and was assigned to the Markham Courthouse for twenty-three of those years, including from 2017 to 2019.    (*Id.* ¶ 173.)    Stratham alleges that she was employed as a Deputy Sheriff for twenty-four years and "dealt with CCDOC detainees" in 2018 and 2019 while working in a court facility at West Harrison Street and South Kedzie Avenue in Chicago.    (*Id.* ¶ 253.)    Thus, it is clear from the face of the *Adams* Complaint that these Plaintiffs' claims arose from conduct that occurred (1) outside the Jail complex, and (2) prior to the two-year limit of March 7, 2021.

The court recognizes, however, that Greene, McBride, and Riles might be able to claim tolling if they were in fact included in the *Howard* class.    All of the Group A Plaintiffs' job titles were included within the *Howard* class as of at least March 12, 2018 (*see Adams* Compl. ¶ 31 n.1), and while Greene, McBride, and Stratham do not specifically allege that they worked at the Jail

20

complex, it is possible they did at some point and thus qualified for class membership. Alternatively, it is possible that these Plaintiffs could have, but failed to, plead additional incidents of sexual harassment that occurred on or after March 7, 2021. Thus, "given the ambiguity of the complaint language (and the paucity of allegations), dismissal without prejudice is appropriate." *Campbell-Davis v. Cook Cnty. Health & Hosp. Sys.*, No. 21 C 3555, 2022 WL 4465713, at *3 (N.D. Ill. Sept. 26, 2022). The court will dismiss Greene's, McBride's, and Stratham's claims without prejudice and with leave to refile if they can allege facts that demonstrate their claims are timely.

As for Riles, she alleges in the Complaint that she "has been employed" as a Deputy Sheriff for twenty-four years and was sexually harassed while working at the Markham Courthouse from 2017 through 2020. (*Id.* ¶ 226 (emphasis added).) In their brief, however, Plaintiffs assert that Riles is still employed at the Markham Courthouse "where sexual harassment is still occurring in 2023 in the form described in the *Adams* complaint," making it irrelevant whether she was or was not part of the prior *Howard* class for tolling purposes. In general, a plaintiff opposing a Rule 12(b)(6) motion "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Because Riles' assertions in briefing are consistent with the present-tense description of her employment that she provides in the complaint, the court will not dismiss her claims on statue-of-limitations grounds.

### B.    Group B: *Adams* Plaintiffs with Pre-2021 Claims Included in *Howard* Class

Defendants next argue that *Adams* Plaintiffs Sherri Ballentine, Kimly Bell, Latonya Davis, Wilhemina Derengowski, Katina Harris, Laura Hernandez, Erica Madkins, Paris Mccoy, Crystal McSwain, and Briseida Medina (collectively, the "Group B Plaintiffs") should have their claims dismissed with prejudice because they were part of the *Howard* class, but alleged claims stemming from conduct that occurred prior to March 2021. All are current or former CCSO correctional officers, deputy sheriffs, correctional rehabilitation workers, or court services deputies

who describe incidents that occurred between 2016 and 2020.  (*See, e.g.*, *Adams* Compl. ¶ 52 (Plaintiff Ballentine experienced harassment "at least as recently as May 2018"); *id.* ¶ 175 (Plaintiff McCoy experienced harassment "throughout her employment," which ended in 2019).)  The parties do not appear to dispute that these Plaintiffs fall within the *Howard* class definition, or that the time for filing their claims was tolled for the 39-month period from November 2017 to March 2021 while the *Howard* action held either putative or certified class status.  But given that the *Adams* action was filed on March 6, 2023, all of the Group B Plaintiffs' claims would necessarily fall outside the two-year statute of limitations if the clock on their claims began to run when the Seventh Circuit decertified the *Howard* class on March 4, 2021.

Plaintiffs argue, however, that they are entitled to additional *American Pipe* tolling for the brief period in 2021 when the *Howard* plaintiffs pursued amended class status after the Seventh Circuit's decision.  A brief overview of the *Howard* action's procedural history is necessary to understand this argument.  In its March 4, 2021 order, the Seventh Circuit expressly left open the possibility that class members "could band together to form a smaller class or classes." *Howard*, 989 F.3d at 605.  On March 19, 2021, the *Howard* parties filed a joint status report in which the plaintiffs asked the district court to "set a uniform deadline for former class members to join or intervene, coupled with continuing *American Pipe* tolling for all such claims until that date."  (Joint Status Rep. [315] in *Howard v. Cook Cnty. Sheriff's Off.*, No. 17 C 8146.)  The *Howard* court agreed to this proposal and set the "uniform deadline" on July 7, 2021, but made no mention of tolling.  (Minute Entry [330] in *Howard v. Cook Cnty. Sheriff's Off.*, No. 17 C 8146).  On May 17, 2021, the *Howard* plaintiffs sought the district court's leave to file a consolidated amended fourth class action complaint on behalf of various smaller classes; the court granted leave on June 7, and the plaintiffs filed their complaint the following day.  Following mass intervention by 529 individual plaintiffs, however, the *Howard* plaintiffs reversed course on August 20, 2021 and notified the district court they would no longer pursue class status.  Thus, Plaintiffs argue, they should be given another 95 days of tolling for the period from May 17 through August 20 of 2021.

If this additional period is subtracted from their two-year clock, the Group B Plaintiffs can plausibly assert that their claims, filed on March 6, 2023, are timely.[8]

The court agrees with Plaintiffs that *American Pipe* tolling should be extended past the Seventh Circuit's decertification order. In the Seventh Circuit, "tolling lasts from the day a class claim is asserted until the day the suit is *conclusively* not a class action . . . ." *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011) (emphasis added). In cases where this determination is made by a court of appeals rather than a district court, the statute ordinarily begins to run on the date of the appellate court's decertification order. *Kelly v. Cap. One, N.A.*, 717 F. Supp. 2d 805, 807 (E.D. Wis. 2010). This is because "[t]he purpose of tolling is to encourage putative class members to rely on a class action in which they reasonably expect to obtain relief rather than filing individual suits," and a reversal of certification puts absent class members "fairly on notice" that they can no longer rely on the class action for this purpose. *Id.* at 808 (citation omitted). But in circumstances where there is some uncertainty about the action's future class status, it is not clear that absent class members were fairly on notice.

The Seventh Circuit does not appear to have addressed the question of whether an appellate decision reversing a district court's class certification leaves *American Pipe* tolling in place where, as in this case, the appellate ruling expressly leaves open the possibility of further class litigation. At least one other district court outside this circuit, however, has concluded based on similar facts that continued tolling is warranted. In *In re Initial Public Offering Securities*

---

[8]     As an illustrative example, Laura Hernandez alleges that she has been employed by CCSO for sixteen years and has experienced harassment including "at least two incidents of detainees masturbating in her presence in Division 4 in approximately November / December 2017." (*Adams* Compl. ¶ 133.) Assuming for the sake of argument that these were the *only* two incidents that Ms. Hernandez suffered, and that they occurred on the earliest possible date consistent with her pleadings—November 1, 2017—the statute of limitations for her claims would have been paused for the entire pendency of the *Howard* class, from November 10, 2017 to March 4, 2021. Without further *American Pipe* tolling, Ms. Hernandez's statute would have run for a cumulative period of two years, eleven days by the time the *Adams* complaint was filed on March 6, 2021. But with the benefit of an additional 95 days' tolling in the interim, Ms. Hernandez's statute would only have run for roughly one year, nine months by that date.

*Litigation*, the Southern District of New York considered the effect of an appellate reversal of its class certification decision that stated: "Nothing . . . precludes [plaintiffs] from returning to the District Court to seek certification of a more modest class, one as to which the Rule 23 criteria might be met, according to the standards we have outlined." 617 F. Supp. 2d 195, 200 (S.D.N.Y. 2007) (citing *Miles v. Merrill Lynch & Co., Inc.*, 483 F.3d 70, 73 (2d Cir. 2007)). The district court concluded that "whether tolling continues after certification is denied depends on the facts and circumstances of each case," and that "it was reasonable for putative class members to rely on the possibility of class certification, albeit of a more narrow class." *Id.* In the case before this court, the Seventh Circuit's *Howard* decision contained highly similar language, confirming that "a smaller class comprising a subset of class members who have had comparable experiences could form a coherent class." *Howard*, 989 F.3d at 605. This language could lead absent class members reasonably to rely on the possibility of class-based relief through the *Howard* litigation even after the Seventh Circuit's initial decertification. *See also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:15 (20th ed. 2023) ("An appellate order decertifying or vacating class certification but expressly authorizing consideration on remand of certification on an alternate basis . . . does not end the toll.").

Defendants cite the Fifth Circuit's decision in *Salazar-Calderon v. Presidio Valley Farmers Association* for the proposition that after an initial denial of class certification, tolling is not available to preserve "subsequent petitions involving the same class." 765 F.2d 1334, 1351 (5th Cir. 1985). The court respectfully finds *Salazar-Calderon* inapplicable here. *Salazar-Calderon* involved four successive class actions brought by Mexican nationals against their employer for violations of their employment agreement and federal law during the 1977 farm season. After the district court in the first case denied class certification, the plaintiffs filed the second and third actions in a different division of the same district, each "suggesting *the same class* denied in [the first action] . . . ." *Id.* at 1350 (emphasis added). The Fifth Circuit subsequently found that the plaintiffs in the fourth action were entitled to tolling for the pendency of the first, but not the second or third actions.

24

Importantly, the Fifth Circuit's decision was limited to "[t]he particular facts" at issue in that case, namely the successive filing of multiple *identical* class petitions in different district courts.  *Id.*  It did not address the situation presented here, where an appellate court reverses a district court's initial certification order but expressly leaves open the possibility of a different class definition.[9]

Because the court finds that the Group B Plaintiffs are entitled to additional *American Pipe* tolling for the period in 2021 when the *Howard* plaintiffs sought amended class status, it concludes that all have pleaded sufficient facts to avoid dismissal of their claims as untimely at this stage. All claim that they experienced at least one incident of sexual harassment which occurred between November 2017 and when its plaintiffs abandoned their pursuit of class status in August 2021.[10]  Thus, the clock on their individual claims would have been paused for at least 95 days in 2021 while the *Howard* amended class action complaint was still operative, making it plausible that their claims were timely filed as of March 2023.

### C.     Group C: *Adams* Plaintiffs with Indeterminate 2021 Claims

Finally, Defendants argue that *Adams* Plaintiffs Desiree Carter-Peterson, Alexandria Coutrakon, Dainty Douglas, Kesha Marion, Laura McDonald, Sharon Rayford, Algeia Scott, Debra Williams, and Teresa Xiong (collectively, the "Group C Plaintiffs") should have their claims

---

[9]     Nor, as Defendants argue, is this ruling contrary to the Supreme Court's policy concerns expressed in *China Agritech, Inc. v. Resh*, 584 U.S. __, 138 S. Ct. 1800 (2018).  In *China Agritech*, the Court held that *American Pipe* tolling does not extend to subsequent *class-action* claims brought by members of an initial class.  The Court's decision was focused on avoiding the possibility of "effectively stacking class actions in the hope that a court somewhere can be convinced to certify a class in another case, filed perhaps many years after the statute of limitations has expired."  *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 615 (7th Cir. 2020) (citing *China Agritech*, 138 S. Ct. at 1806).  Here, the *Adams* plaintiffs are not seeking class status, and there is no indication that the *Howard* plaintiffs sought to engage in this kind of gamesmanship by briefly taking up the Seventh Circuit's invitation to pursue class certification on a more modest basis.

[10]     The one uncertainty is Crystal McSwain, who describes conduct that occurred starting in 2016 or 2017.  Ms. McSwain does, however, specifically allege that she has been subjected to harassment "from 2016 or 2017 *to the present*." (*Adams* Compl. ¶ 181 (emphasis added).)  Moreover, Ms. McSwain's pleadings suggest that she is still employed at CCSO.  (*Id.*) At the pleading stage, it is reasonable to give her the benefit of the doubt that she has experienced at least one incident of harassment within the applicable time period.

dismissed because they fail to state with particularity whether their incidents of sexual harassment they experienced occurred before or after March 7, 2021. The Plaintiffs in Group C fall under a variety of job titles, including "HIV grant manager/counselor/tester" (*Adams* Compl. ¶ 79 (Plaintiff Carter-Peterson)), "Administrative Assistant II" (*id.*¶ 172 (Plaintiff Marion)), and "Pharmacy Technician in CCDOC" (*id.* ¶ 284 (Plaintiff Xiong)). They all allege claims arising from conduct that took place at an unspecified date in 2021. (*See, e.g.*, *id.* ¶ 222 (Plaintiff Rayford experienced "at least two incidents" of sexual harassment "in 2020 or 2021"); *id.* ¶ 237 (Plaintiff Scott experienced sexual harassment "[f]rom 2014 through 2021").)

The court declines to dismiss the Group C Plaintiffs' claims on this basis. As an initial matter, as Plaintiffs have argued, it is likely that at least some of these plaintiffs are *Howard* class members who benefit from the additional period of tolling in 2021 that this court recognized in the previous Section. Given the more expansive range of job titles contained in Group C, confirming this for each class member would require a careful cross-check between each Group C Plaintiff's allegations and the shifting definitions of the *Howard* class over time. But this is not necessary at this stage: even without the benefit of additional tolling, the Group C Plaintiffs' allegations are sufficient at this stage to plausibly support a finding of timeliness. All have collectively alleged that they are or were jointly employed by Defendants (*id.* ¶ 6) and that they experienced sexual harassment sometime in 2021. This presents "a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense"—i.e., that the harassment occurred on or after March 7 of that year, placing them within the two-year statute of limitations period with or without any additional tolling. *Sidney Hillman Health Ctr.*, 782 F.3d at 928. Given the ongoing, pervasive, and inescapable atmosphere of sexual harassment at the Jail, the court will assume in this ruling that Plaintiffs will be able to demonstrate that they suffered particularized incidents of harassment on or after a specific date. For now, for purposes of Rule 12(b)(6), the court concludes their allegations are sufficient. *See Agbefe v. Bd. of Educ.*, 538 F. Supp. 3d 833, 843 (N.D. Ill. 2021) ("The murkiness in the timeline favors [plaintiff] at this stage, as the court cannot

conclude from the complaint—or any other materials it may consider on a Rule 12(b)(6) motion—that all the alleged sex-based misconduct . . . and all the [defendant's] insufficient response to her complaints about that misconduct, occurred before [the limitations cutoff].").

Nevertheless, the court cautions all Plaintiffs that their claims remain subject to a possible timeliness defense. If further discovery conclusively establishes that any Plaintiff cannot claim tolling and did not experience sexual harassment within the two-year statute of limitations, Defendants will be free to seek dismissal of their claims on that basis. *See Sidney Hillman Health Ctr.*, 782 F.3d at 928 (noting that "questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record").

## **CONCLUSION**

For the above reasons, Defendants' motion to dismiss in *Adams v. Cook County Sheriff's Office* ([29] in No. 23 C 1390) is granted without prejudice as to all claims asserted by Plaintiffs Rosalyn Greene, Marilyn McBride, and Brenda Stratham, but denied as to all other Plaintiffs. Defendants' motions to dismiss in *Bradford v. Cook County Sheriff's Office* ([20] in No. 23 C 2559) and *Alabi v. Cook County Sheriff's Office* ([17] in No. 23 C 3444) are denied in full. Defendants are directed to answer the complaints within 21 days.

ENTER:

Dated: January 24, 2024

_____
REBECCA R. PALLMEYER
United States District Judge